IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

GWENDOLYN HUTSON,            )
                            )
        Petitioner,         )
                            )
vs.                         )         Case No. CIV-04-92-R
                            )
MILLICENT NEWTON-EMBRY,     )
Warden,                     )
                            )
        Respondent.         )

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court for review of the Report and Recommendation entered by United States Magistrate Judge Bana Roberts (Document No. 18), and for consideration of the Petitioner's Motion to Appoint Counsel (Document No. 15). The Attorney General for the State of Oklahoma objects to the Report and Recommendation on behalf of the Respondent. The Court conducts a *de novo* review of those findings and recommendations to which the Respondent objects. The Petitioner has filed no objection.

The Petitioner challenges her conviction for first degree murder after a jury trial in the District Court of Oklahoma County, Case No. CF-2001-4124. The Petitioner was sentenced to life imprisonment without the possibility of parole. The Petitioner appealed her conviction to the Oklahoma Court of Criminal Appeals, claiming ineffective assistance of trial counsel. The Oklahoma Court of Criminal Appeals affirmed the Petitioner's conviction and sentence. The Respondent concedes that the Petitioner has exhausted her state court remedies, and that her petition is timely.

In this 28 U. S. C. § 2254 petition for writ of habeas corpus, the Petitioner contends that her trial counsel provided constitutionally ineffective representation by failing to adequately prepare and

present a defense based on the battered woman syndrome, citing *Bechtel v. State of Oklahoma,* 840 P. 2d 1 (Okla. Crim. App. 1992) and *Paine v. Massie,* 339 F. 3d 1194 (10th Cir. 2003).[1]  The Court may grant the Petitioner's writ of habeas corpus only if the state court's adjudication:  1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Title 28 U. S. C. § 2254 (d) (1) and (2).

The Court of Criminal Appeals' opinion recites that the Petitioner stabbed M. C. Wright in the chest with a paring knife on July 1, 2000, after a night of ingesting alcohol and crack cocaine The Petitioner dialed 911 after about ten minutes, and reported that she had stabbed her husband.[2] The Petitioner told the 911 operator that she had aimed at Mr. Wright's heart, but thought she had missed.  When police officers and paramedics arrived, the Petitioner was standing on the front porch of their home waving her arms, and Mr. Wright was in a chair on the front porch.  The responding police officer testified that the Petitioner appeared to be pretty upset or excited, and that she "hollered and screamed" continuously.  The officer had to handcuff and restrain the Petitioner so the officers and paramedics could tend to Mr. Wright.  Mr. Wright was unresponsive, and died within minutes of the single stab wound to his chest.  A paramedic present at the scene testified at

---

[1]The Petitioner's ineffective assistance of counsel claim is based on several perceived errors by her trial counsel. The Magistrate Judge found that the Petitioner's claim of ineffective assistance of counsel lacked merit insofar as it was based upon trial counsel's failure to investigate police or medical records of earlier incidents of domestic violence, because the Petitioner had not shown that she advised her counsel or any prior police reports or medical treatment.  The Magistrate Judge further found that the Petitioner had not previously asserted a claim of ineffective assistance of counsel based upon counsel's failure to present medical records allegedly documenting abuse from several area hospitals, and that this claim was unexhausted.

[2]It is not clear from the record whether Mr. Wright was the Petitioner's husband or a live-in companion.

trial that he heard a black female a the scene yelling obscenities at the victim, telling him to die, although the Petitioner denies this.  (Tr. vol. 3, p. 149; Tr. vol. 4, p. 77).

At the police station, when a police officer informed the Petitioner that Mr. Wright was dead, she responded:  "No, Lordy no."  (Tr., vol. 3, p. 68).  An officer overheard the Petitioner telling her son that she and Mr. Wright had argued, and that she stuck him with a knife.  The Petitioner reportedly told her son that she was trying to stab Mr. Wright in the heart but thought she had missed, and that she thought she would be in jail for the rest of her life.  (Tr., vol. 2, p. 68).

At trial, the Petitioner's two daughters,[3] son[4] and sister[5] testified concerning the history of domestic violence between the Petitioner and Mr. Wright.[6]  The Petitioner likewise testified that she had been abused by Mr. Wright on a frequent basis throughout their twelve year relationship.

---

[3]The Petitioner's adult daughter, Keshia Hutson, testified that the Petitioner and Mr. Wright fought "all the time," nearly every weekend.  (Tr. vol. 4, p. 24).  Keshia Hutson testified that on one occasion she had seen Mr. Wright beat the Petitioner on the head with a bat, and on another occasion she saw Mr. Wright put a knife to the Petitioner's throat and threaten that if she left, he was going to hurt her.  (Tr. vol. 4, pp. 24 - 25).  Keshia Hutson testified that she saw Mr. Wright hit the Petitioner with his fists, and that she saw him slap the Petitioner in the mouth and knock her front tooth out.  (Tr. vol. 4, p. 26).  Keshia Hutson testified that another time, Mr. Wright appeared at a friend's apartment and "started hitting on my mama for no reason."  (Tr. vol. 4, p. 40).  Keshia Hutson also testified that the fights between the Petitioner and Mr. Wright occurred when both the Petitioner and Mr. Wright had been drinking.  The Petitioner's younger daughter, Iesha Hutson, confirmed her sister's testimony that Mr. Wright had hit the Petitioner with a bat.  (Tr. vol. 3, p. 45).

[4]The Petitioner's twelve year-old son, James Hutson, testified that he saw the Petitioner and Mr. Wright fight "a lot," and that Mr. Wright once made a hole in the wall by pushing the Petitioner into it.  (Tr. vol. 4, p. 57).  James Hutson testified that he had seen Mr. Wright had hit the Petitioner in the mouth, knocking a tooth out.  The Petitioner's younger daughter, Iesha Hutson, confirmed her brother's testimony that Mr. Wright had once hit the Petitioner and knocked her tooth out.  (Tr. vol. 3, p. 44).

[5]The Petitioner's sister, Joyce Scott, testified that the Petitioner and Mr. Wright fought a lot, and that Mr. Wright had once knocked the Petitioner's tooth out.  (Tr. vol. 4, p. 45).  Ms. Scott further testified that she saw the Petitioner with black eyes and a swollen face "a lot of times," although she had not seen Mr. Wright inflict this abuse.  (Tr. vol. 4, pp. 44 - 45).  Ms. Scott testified that she sometimes picked the Petitioner up and took the her to her house.  Ms. Scott testified that she had tried to talk to the Petitioner about getting some help with Mr. Wright's violence, and that she had tried to take the Petitioner to the hospital when Mr. Wright knocked her tooth out.  (Tr. vol. 4, pp. 45 - 46).

[6]It is unclear from the record whether the Petitioner and Mr. Wright were married. The Petitioner's daughter, Keshia Hutson, described Mr. Wright as "my mother's uh, boyfriend – husband."  (Tr. vol. 4, p. 23).  The Petitioner's sister, Joyce Scott, described Mr. Wright as the Petitioner's "common law husband."  (Tr. vol. 4, p. 44).  The Petitioner testified that she and Mr. Wright were married under common law, but that she was married to another individual as well.  (Tr. vol. 4, pp. 81 - 82).

Witnesses testified that on one occasion early in their twelve-year relationship, Mr. Wright put a knife to the Petitioner's throat and told her that he was going to kill her.  The Plaintiff testified that during this incident, she cut her thumb almost off, trying to grab the knife.  (Tr. vol. 4, pp. 70 - 71).  The Petitioner testified that Mr. Wright had beaten her with bats, and that she "always" had black eyes.  (Tr. vol. 4, p. 71).

The Petitioner and her witnesses testified that Mr. Wright's violent outbursts usually began when he and the Petitioner were drinking.  The Petitioner testified that the violent episodes would usually begin with Mr. Wright calling her names, and that when this occurred she knew that he was "getting ready to do something."  (Tr. vol. 4, p. 71).  The Petitioner testified that she left Mr. Wright for six months in 1998, but that she went back to him because he said that he wasn't going to hit her any more.  (Tr. vol. 4, p. 72).

The Petitioner testified that on the day she stabbed Mr. Wright, they had been drinking alcohol and using crack cocaine, that they were arguing, and that Mr. Wright began calling her names.  (Tr. vol. 4, pp. 74 - 75).  The Petitioner got up and tried to leave the room because she knew that Mr. Wright was "going to get ready to start fighting."  (Tr. vol. 4, p. 76).  As the Petitioner tried to leave the room, Mr. Wright started kicking her, followed her into the bedroom and came "right behind" her.  The Petitioner testified that she was afraid of what Mr. Wright was going to do to her, and that she was tired of him hitting her.  The Petitioner further testified that she thought that if she stabbed Mr. Wright, maybe he would leave her alone and not hit her again.  (Tr. vol. 4, pp. 77 - 78).  The Petitioner testified that she picked up a paring knife from the coffee table to defend herself, though she admitted that Mr. Wright did not have any weapons.  The Petitioner testified that she

"had no intentions" of killing Mr. Wright, and that she didn't think that he would die.  (Tr. vol. 4, pp. 77 - 78).[7]

In affirming her conviction, the Oklahoma Court of Criminal Appeals rejected the Petitioner's claim that her trial counsel was ineffective for failing to present expert testimony on the battered woman syndrome, finding that such expert testimony wasn't required because the Petitioner's contention that she had been abused was without merit.  The court found that although an expert witness on the battered woman syndrome "would have been helpful to explain the defense" of battered woman syndrome, counsel's failure to obtain such an expert was not unreasonable, because the evidence that the Petitioner had been a battered woman "was not all that persuasive."  The court noted that the only witnesses called by the Petitioner in support of her claim that she was a battered woman were her sister and her three children, and that these witnesses admitted that the Petitioner had started some of the altercations between herself and Mr. Wright.[8] The court emphasized that there were "no police reports, no medical reports, employment reports or DHA reports" supporting the Petitioner's claims of domestic abuse, and that the Petitioner's probation officer did not recall even one occasion where the Petitioner appeared to be injured.  The court reasoned that an expert's testimony on the battered woman syndrome "might have called attention to the lack of evidence that [Petitioner] was in fact a battered woman," and concluded that

---

[7]The Petitioner testified:

> "I didn't know what he was going to do to me.  An I – you know, I – was just trying to keep him off me.  I was tired of him hitting me, and I just – you know.  I said if I stab him, you know, maybe he will go on and leave me alone.  And that will teach him not to ever hit me again, you know.  But I had no intentions of him dying.  I – I didn't even think that he would die from –

Tr., vol. 4, pp. 77 - 78.

[8]The Petitioner also testified at length about Mr. Wright's years of physical abuse, his threat to kill her, and her fear of Mr. Wright.

defense counsel's failure to present a battered woman syndrome expert constituted reasonable trial strategy.  (Opinion of Oklahoma Court of Criminal Appeals, October 21, 2002, pp. 8 - 9).

In her Report and Recommendation, the Magistrate Judge found that trial counsel's failure to obtain expert testimony on the battered woman syndrome was objectively unreasonable, and thus satisfied the first prong adopted in *Strickland v. Washington,* 466 U. S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) for ineffective assistance of counsel claims.  The Magistrate Judge further concluded that under the circumstances, the Oklahoma Court of Criminal Appeals' decision to the contrary constituted an unreasonable application of Supreme Court law as established in *Strickland.* The Magistrate Judge further concluded that the record, to date, is insufficient to determine whether the Petitioner can make the requisite showing of prejudice to satisfy the second prong of *Strickland.*

The "battered woman syndrome" was first recognized in *Bechtel v. State of Oklahoma,* 804 P. 2d 1 (Okla. Crim. App. 1992).  In *Bechtel,* the defendant, who was charged with the first degree murder of her husband, presented evidence of a history of domestic violence by the decedent.  The defendant appealed the trial court's refusal to admit testimony by a licensed psychologist who had pioneered research on the battered woman syndrome.  840 P. 2d at 4 - 6.  The Oklahoma Court of Criminal Appeals found that the battered woman syndrome had gained scientific acceptance, and that expert testimony on the syndrome would have aided the jury in determining the reasonableness of the defendant's belief that she was in imminent danger for purposes of her claim of self defense. 840 P. 2d at 8 - 9.  The court concluded that expert testimony was necessary to counter common myths or misconceptions which the average juror may hold regarding the battered woman syndrome.

The Tenth Circuit addressed the battered woman syndrome as recognized in Oklahoma in *Paine v. Massie,* 339 F. 3d 1194 (10th Cir. 2003). In *Paine,* a habeas corpus petitioner claimed that her trial counsel had rendered ineffective assistance by failing to present expert testimony on the battered woman syndrome. Several witnesses had testified at trial about the various ways Ms. Paine's deceased husband had abused her during their marriage. 339 F. 3d at 1196. Although the defendant's trial counsel defended on a theory of self defense, and offered a licensed psychologist who testified that in his opinion, the defendant had been in genuine fear for her life at the time she killed her husband, counsel specifically disavowed any attempt to qualify the psychologist as an expert on the battered woman syndrome. Similarly, although defense counsel used the psychologist to establish that Ms. Payne had "features of battering," he did not ask the psychologist whether, in her opinion, Ms. Paine suffered from the battered woman syndrome. 339 F. 3d at 1201. In fact, defense counsel in *Paine* offered no expert testimony on the battered woman syndrome, or how the syndrome may have affected the objective reasonableness of Ms. Paine's subjective fear. 339 F. 3d at 1197. On habeas corpus appeal, the United States Court of Appeals for the Tenth Circuit found that there was little doubt from the record that Ms. Paine's counsel put a battered woman syndrome theory into play at trial, and that the trial court had given a specific battered woman syndrome jury instruction on reasonableness. The Tenth Circuit found that defense counsel's failure to offer expert testimony on the battered woman syndrome, to provide context for the jury on the reasonableness of the defendant's subjective fear, amounted to objectively unreasonable performance. *Id.* Therefore, the Tenth Circuit reasoned, the Oklahoma Court of Criminal Appeals' reliance on "trial strategy" to excuse counsel's failure to offer expert testimony in support of the battered woman

defense was an unreasonable application of *Strickland v. Washington,* 466 U. S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

The Respondent contends that there was insufficient evidence to support the Petitioner's claim that she was a battered woman, because, unlike the defendant in *Bechtel,* the Petitioner did not produce medical records, police reports or other documentary evidence supporting her claim of abuse. The Respondent further contends that the Petitioner does not meet the definition of a battered woman because, unlike the women in *Bechtel* and *Paine,* she did not offer evidence of repeated "cycles" of "withdrawal" from the relationship and "re-initiation" of the abuse. (Objection, p. 6). The Respondent argues that in the absence of such evidence, it was "reasonable trial strategy" for counsel to elect not to present an expert witness on the battered woman syndrome, and that the state Court of Criminal Appeals' rejection of the Petitioner's claim of ineffective assistance counsel was objectively reasonable and consistent with federal law.

Arguments similar to the Respondent's were rejected by the Tenth Circuit in *Paine, supra.* In *Paine,* the Tenth Circuit rejected the state's argument that counsel's failure to offer a battered woman syndrome expert was sound trial strategy,[9] noting that the trial court had given a battered woman syndrome-specific jury instruction on reasonableness, as required in Oklahoma in all battered woman syndrom cases, and that neither party had objected. *Paine,* 339 F. 3d at 1202, *citing Bechtel,* 840 P. 2d at 9. The Tenth Circuit in *Paine* reasoned that the trial court "obviously" viewed the case as one raising the battered woman syndrome defense and requiring the special instruction. *Paine,* 339 F. 3d at 1202. The court found that the trial court and both parties had essentially agreed

---

[9]In *Paine,* the state argued that the petitioner's claims of prior abuse were "unsubstantiated" because there was "no clearly documented pattern of abuse (i.e., medical treatment for abuse, calling the police, telling friends, etc.)," and that Ms. Payne's behavior, including her apparent lack of fear of, and even physical aggression toward her husband, did not support a battered woman defense.

that Ms. Paine was "battered," and that a battered woman syndrome defense had been put in motion

by her counsel.  The court found that although Ms. Paine's trial counsel had "labored extensively"

to establish that Ms. Paine's subjective fear of her husband was genuine, counsel had made no

apparent attempt to establish the reasonableness of that fear in the context of her suffering from the

battered woman syndrome.  *Id.*  "Simply put, counsel failed to do something that the OCCA said was

*necessary* to mount an effective self-defense claim given the jury's likely misconceptions about" the

battered woman syndrome.  *Id.*  The court reasoned that, given the evidence that Ms. Paine was

battered, and the fact that the court and both parties at trial viewed her case as a battered woman

case, "it simply makes no sense for the state to argue now that counsel somehow acted reasonably

by failing to offer expert BWS testimony because Ms. Paine was not a 'battered woman.'"  *Paine*

at 1203 - 1204.

As in *Paine,* the Petitioner in this case raised the issue of a history of domestic abuse in

support of her claim of self defense.  The Petitioner  offered testimony from herself and her family

members that she had been abused by Mr. Wright.  The trial court gave the uniform jury instruction

on the battered woman syndrome without objection from either party.[10]  Given the use of that

instruction, and the nature of trial counsel's self defense evidence, counsel's failure to offer expert

testimony on the battered woman syndrome fell below the professional standard of reasonable

representation for an attorney in Oklahoma.  *Paine v. Massie,* 339 F. 3d at 1202.[11]  As in *Paine,* the

---

[10]The jury was instructed at length on the Petitioner's self defense claim in this case, including the Oklahoma uniform instruction on self-defense in "battered women cases." See OUJI-CR-8-47, given as Instruction No. 10 at the Petitioner's trial.

[11]The Respondent argues in her objection that the term "battered woman" is not to be found anywhere within the trial court's lengthy discussion with the attorneys regarding self defense and the scope of the state's cross-examination of defense witnesses.  Notwithstanding the absence of the term, it is clear from the transcript that the prosecuting attorney, the Petitioner's attorney and the trial judge were discussing this particular aspect of self defense. *See* Tr. v. 4, pp. 8 - 9 (Prosecuting attorney stating: "In this case, the claim is that that imminent danger came from a long

Petitioner's counsel failed to do something the state court of criminal appeals said was *necessary* to mount an effective self-defense claim, given the jury's likely misconceptions about the battered woman syndrome. *Id.* Thus, the Court agrees with the Magistrate Judge that trial counsel's failure to obtain expert testimony on the battered woman syndrome was objectively unreasonable, and that the Petitioner has satisfied the first prong of the *Strickland* standard.[12]  As the Magistrate Judge explained, without the testimony of a battered woman syndrome expert, the jury was simply unable to consider fully the evidence presented, and to apply the jury instructions regarding self defense and the battered woman syndrome. Therefore, as the Magistrate Judge explained, the state court's decision to the contrary is an unreasonable interpretation of Supreme Court law.

Having demonstrated that her trial counsel's omission of expert testimony on the battered woman syndrome was objectively deficient, the Petitioner must also show that she was prejudiced by counsel's actions. *Strickland,* 466 U. S. at 694. Because the Oklahoma Court of Criminal Appeals did not reach this issue, the Court must conduct an independent review of the prejudice prong of the *Strickland* analysis. *See, e.g., Battenfield v. Gibson,* 236 F. 3d 1215, 1234 (10th Cir. 2001). To establish prejudice, the Petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *Strickland,* 466 U. S. at 694; *Upchurch v. Bruce,* 333 F. 3d 1158, 1163 (10th Cir. 2003). The Court agrees with the Magistrate Judge that the Tenth Circuit's opinion in *Paine* is instructive in this regard, and that

---

standing pattern, habit, routine, scheme, uh, of the victim, uh, perpetrating violence upon the defendant. And that the defendant over that period of time uh, became of had uh, held such a mental state that she believed and was in such fear on the date of the homicide that she believed she was in imminent danger.").

[12]*See Strickland v. Washington,* 466 U. S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland,* the Petitioner must show: 1) that her attorney's performance fell below accepted standards of reasonableness, and 2) that she was prejudiced thereby.

*Paine* appears to require that the Petitioner be given an opportunity to produce a qualified battered woman syndrome expert as described in *Paine*. 339 F. 3d at 1204.

Conclusion.

The Respondent's Objection is hereby OVERRULED. The Magistrate Judge's Report and Recommendation is hereby ADOPTED in full. The Petitioner's motion for appointment of counsel is hereby GRANTED. The case is again referred to United States Magistrate Judge Bana Roberts for further proceedings, including initial review of whether the Petitioner has satisfied the "prejudice" prong under *Strickland v. Washington, supra.*

**IT IS SO ORDERED this 11th day of July, 2006.**

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE